LEONOR K. REICHBART, as Administratrix, etc., of HARRY REICH-
BART, Deceased, Respondent, *v.* SMITH-EISEMANN CORPORATION
OF AMERICA, Appellant.

First Department, June 12, 1925.

Sales — passing of title — action to recover purchase price — acceptance
by defendant shown — evidence — complaint in action by defendant
against third person to whom it sold goods and letters written by
defendant's treasurer to said purchaser properly admitted — not neces-
sary to show delivery where acceptance is established.

In an action to recover the purchase price of moleskins to be shipped from Europe,
in which the defense interposed was that title had not passed to the defendant,
the evidence shows that the defendant accepted the moleskins after inspection,
since it appears that prior to the receipt of the moleskins from New York the
defendant had sold the same to third persons; that the defendant took over the
shipment into his own hands on the arrival of the goods and procured whatever
transfers and documents were necessary to effect the clearance and proceeded
to place itself in a position to make delivery to its own customer; that correspond-
ence between defendant's treasurer and its customer shows that the defendant
considered that it had accepted the goods, and that it was urging its customer
to receive them, and that an action was brought by the defendant against its
own customer, the complaint in which alleges a tender of the goods to the defend-
ant's customer.

The summons and pleadings in the action by the defendant against its own
customer, the complaint in which was verified by one of defendant's officers
on his own knowledge, and the letters written by defendant's treasurer to said
customer were properly admitted in evidence in this action for the purpose
of showing that the defendant accepted the goods and that title passed to the
defendant prior to the commencement of this action.

Acceptance having been shown it was not necessary to establish actual delivery
of the goods, for where there has been an acceptance, questions of time and
place of delivery become immaterial.

APPEAL by the defendant, Smith-Eisemann Corporation of
America, from a judgment of the Supreme Court in favor of the
plaintiff, entered in the office of the clerk of the county of Bronx
on the 17th day of October, 1924, upon the verdict of a jury, and
also from an order entered in said clerk's office on the same day,
denying defendant's motion for a new trial made upon the minutes.

*A. Bertram Samuels* [*John E. Leddy* of counsel], for the appellant.

*Peter A. Abeles* [*George J. Gruenberg* of counsel], for the respondent.

McAVOY, J.:

This cause has been before this court heretofore on an appeal
from an order denying the defendant's motion for judgment on
the pleadings. (See 199 App. Div. 571.) That order was reversed
and judgment on the pleadings in favor of defendant granted. The

plaintiff thereafter, pursuant to leave, served an amended complaint, and the cause was tried on the amended pleadings and judgment rendered for the plaintiff.

The amended complaint alleges the making of a written agreement between plaintiff's intestate and the defendant for the purchase and sale of 15,000 French moleskins for the sum of $4,500. The moleskins in question were then believed to be in transit bound for New York, and were to be delivered to defendant if and when received by plaintiff's intestate. Since the commencement of the suit this plaintiff, the administratrix of the original plaintiff, has been substituted in place of her intestate.

The complaint, as amended, alleges that the skins arrived in New York on March 9, 1920, and plaintiff's intestate notified defendant of such arrival and tendered the goods to defendant. Thereafter it is set forth that the plaintiff's intestate thereupon delivered the goods to the defendant, and that defendant thereupon accepted the goods from the plaintiff's intestate. Further, the plaintiff asserts that, pursuant to the contract and the alleged delivery and acceptance, title to the goods passed to defendant before the commencement of the action. The pleader claims that no part of the agreed price of $4,500 has been paid. The action, therefore, proceeds for the recovery of the purchase price. The existence of the contract is admitted, but the version of plaintiff's intestate thereof is denied in the answer. All the other material allegations of the complaint are also denied. Besides these denials the defendant has set forth five defenses, and in effect also claims that the goods have never been delivered to the defendant nor have they been accepted by the defendant, and, therefore, title never passed, and this action for the purchase price cannot be maintained in view of the previous holding of this court.

The proof which plaintiff claimed constituted acceptance of the goods showed the following events: Five days after the contract in question was made, and before the merchandise arrived, the appellant made a similar contract with a firm known as Eisenbach Bros. & Co. to sell to them the same merchandise for $5,200, which was to be paid by the Eisenbach firm to appellant on the arrival of the merchandise. There was no difference in these contracts, except the difference in price and certain other immaterial provisions. The correspondence and related documents lead to a reasonable inference that the appellant immediately took over the shipment into its own hands on the arrival of the goods, and procured whatever transfers and documents were necessary to effect a clearance, and proceeded to place itself in a position in which to make delivery of the merchandise to its own customer, the

Eisenbach firm. The goods were then in effect in its hands, and all that remained to be done, as far as the intestate was concerned, was for appellant to pay the contract price. Appellant, apparently, received notice of the arrival of the goods prior to or on Monday, March 15, 1920. This appears from the fact that on that day it was in touch with the intestate, stating that it would proceed with the examination of the goods, and also on the same day it notified the Eisenbach firm of the arrival of the goods. Appellant also did its own part to effect a clearance of the goods in connection with the examination of the same by one of its men prior to clearance. Apparently, appellant made an examination of the goods on Monday, March 15, 1920, for on the sixteenth it was ready to deliver to its vendees, since it wrote them on that day asking for shipping instructions. Appellant, therefore, needed nothing from the intestate to enable it to ship to its vendees. While intestate was pressing defendant for payment, it did not write the intestate any further request to wait, and this indicates it had passed on the goods by sale to Eisenbach and was awaiting payment itself.

Appellant during this period was endeavoring to make its delivery to its customer who had bought the goods. It appears subsequently that the Eisenbach firm refused to accept this merchandise from the appellant. The intestate had sold these goods to appellant for $4,500 in January, and five days afterwards appellant resold to the Eisenbach firm the goods for $5,200, thus making a profit in January of $700, and respondent was reduced to a loss of $1,300 by reason of the value of the goods at the time of arrival at $3,900, unless the contractor with him would take them up.

Up to March twenty-second, when defendant wrote to the Eisenbach firm stating, " We trust that you will telephone us on Tuesday morning instructing us where to ship the skins," which was nearly two weeks after the arrival of the goods, appellant had never refused to accept from the intestate, but was proceeding in the opposite direction, that is, by holding itself ready to deliver to the Eisenbach firm, and claimed to be ready but for their lack of shipping instructions. No communication was ever sent to the intestate containing any refusal to accept the goods up to this period. On March twenty-third, however, the Eisenbach firm refused acceptance of the goods from the defendants, and in the complaint against that firm by this defendant it set forth that it had a good cause of action on or about the 23d day of March, 1920, for an anticipatory breach, in that appellant, as the complaint says, " would have delivered said mole skins had it not been for " the Eisenbach's refusal to accept them. The complaint

also says that appellant here duly tendered the goods to the Eisenbachs.

The appellant also wrote in its letter of March twenty-ninth a statement to the effect that if their vendees did not take the moles by the thirtieth they would sell for their account, which gives a clear ground for an inference of their acceptance of the goods and an indication of their dominion over and ownership of them. It reads as follows: " We beg to advise you that we are offered 30c for the first and 18c for the second Moles. We shall be compelled to sell same for your account if you do not clear the Moles by the 30th. In the event of such a sale, we shall charge you with our loss." Defendant wrote to the intestate on March thirtieth, when he threatened to seize the goods and sell them for the defendant's account, that " We do not recognize any right on your part to sell any Moles for our account."

Appellant's position, as indicated in its letter of March twenty-ninth to the Eisenbach firm, continued and still existed on July nineteenth when it commenced its action against that firm, showing appellant in possession of the property, asserting that it had absorbed it into its own estate, and was owner of it, and that it still had it in its possession, but that the Eisenbach firm was still refusing to accept from it.

The respondent's position is that there was a delivery by the intestate to, and acceptance by, the appellant in March, as the appellant's complaint in its action against the Eisenbach firm shows. That complaint shows a tender made by the appellant to the Eisenbach firm in March. They allege a " due " tender by it to the Eisenbach firm under a contract, which was the same in terms as that between appellant and the intestate, calling for payment " on arrival," and for tender immediately. What was a due tender in one transaction would be a due tender in the other, and the jury, with both contracts and the appellant's City Court complaint and other exhibits before it, and with the statement of appellant's treasurer on the witness stand that the appellant had never received the merchandise, concluded from the admissions in the City Court complaint that the appellant had received and tendered, not in July, but in March, as that complaint showed.

Thus the jury, from this proof of plaintiff, and upon Smith's denial of receipt and examination of the goods, were entitled to find both a delivery and acceptance, and that an action for the price was proper.

There was no error committed by the court in receiving in evidence any of the plaintiff's exhibits.

Appellant's summons and pleadings in its action against the

Eisenbach firm, verified by appellant's officer on his knowledge, were competent evidence (*Cook* v. *Barr,* 44 N. Y. 156; 1 Greenl. Ev. [15th ed.] § 195); and its letters, written in its behalf by its treasurer, who himself had participated in the institution of that action and the verification of the complaint therein, and testified that he personally had charge of the transaction in the office, were competent evidence.

The court's charge presented the issue of whether there was an acceptance of the goods in proper fashion. He said: " If the mole skins referred to in the contract have been delivered to the defendant, and the defendant has accepted those mole skins, and has become, by delivery and acceptance, the owner of those mole skins, then the defendant is obligated to pay the amount named in the contract as the purchase price.

" But, if there has been no delivery and no acceptance, or a delivery without acceptance, then the plaintiff is not entitled to recover."

On appellant's request this was charged in addition: " This suit is for the full purchase price of the goods. It is brought just as it would have been brought if this merchandise had been carried to Number 217 Broadway and up the stairs there and put down on the floor of the executive office of the defendant corporation and kept in their office by the defendant corporation, without any claim that it was delivered too late or ought not to be paid for." This was an instruction to the effect that unless the goods had been both delivered and accepted, and unless, by delivery and acceptance, the defendant had become owner of them, there could be no recovery.

Where there has been an acceptance, questions of time and place of delivery become immaterial according to the authorities. (*Griggs* v. *Renault Selling Branch,* [1917] 179 App. Div. 845; *Bridges & Co.* v. *Barry,* [1923] 237 N. Y. 281; *Sarachan & Rosenthal, Inc.,* v. *Wilson & Co.,* [1924] 207 App. Div. 768; *Lowinson* v. *Newman,* [1922] 201 id. 266.) In case of acceptance and the subsequent discovery of a defect in the goods themselves within a reasonable time after acceptance, a right to rescind the acceptance, if seasonably made on that ground, would be available to a vendee; but no such situation arises here.

We think the proof is sufficient to sustain the action for the price, and that the judgment and order should be affirmed, with costs.

Clarke, P. J., Dowling, Finch and Martin, JJ., concur.

Judgment and order affirmed, with costs.